UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY GARCIA, | No. 1:15-CV-3089-LRS |
| Plaintiff, | **ORDER GRANTING** |
| | **DEFENDANT'S MOTION** |
| vs. | **FOR SUMMARY JUDGMENT,** |
| | *INTER ALIA* |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social | |
| Security, | |
| Defendant. | |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 18).

## JURISDICTION

Jeffrey Garcia, Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on January 12, 2011. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on July 29, 2013 before Administrative Law Judge (ALJ) Virginia Robinson. Plaintiff testified at the hearing, as did Vocational Expert (VE) Kimberly Mullinax. On September 13, 2013, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1

## STATEMENT OF FACTS

2  The facts have been presented in the administrative transcript, the ALJ's

3  decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.  At

4  the time of the administrative hearing, Plaintiff was 28 years old.  He has no past

5  relevant work experience.  Plaintiff was 25 years old when he applied for SSI benefits

6  on January 12, 2011.

7

## STANDARD OF REVIEW

8

9  "The [Commissioner's] determination that a claimant is not disabled will be

10  upheld if the findings of fact are supported by substantial evidence...." *Delgado v.*

11  *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere

12  scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less

13  than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

14  *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.

15  1988).  "It means such relevant evidence as a reasonable mind might accept as

16  adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91

17  S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may

18  reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457

19  F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

20  On review, the court considers the record as a whole, not just the evidence supporting

21  the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.

22  1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

23  It is the role of the trier of fact, not this court to resolve conflicts in evidence.

24  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

25  interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749

26  F.2d 577, 579 (9th Cir. 1984).

27  ///

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) evaluating the medical opinions of record; and 2) discounting Plaintiff's credibility.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id.*

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being seizure disorder, status post cerebral artery infarct/left sided hemiparesis, sleep apnea, obesity, low average cognitive ability/learning disorder, and depression;

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(a): he can lift and carry 25 pounds occasionally and 10 pounds frequently; stand or walk six hours and sit six hours in a workday; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; occasionally balance; frequently stoop, kneel, crouch and crawl; has unlimited reaching and handling with the right, upper extremity, and with the left upper extremity can assist in lifting and handling, but only occasionally grip; cannot drive and must avoid exposure to workplace hazards such as dangerous machinery and unprotected heights; and has sufficient attention and concentration to perform relatively simple, non-complex tasks; and  4) Plaintiff's RFC allows him to perform other jobs existing in significant numbers in the national economy as identified by the VE, including counter clerk, election clerk, cafeteria attendant and counter attendant.  Accordingly, the ALJ concluded the Plaintiff has not been disabled at any time since January 12, 2011.

**OPINIONS OF TREATING AND EXAMINING PHYSICIANS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition.  If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id.*  "[W]hen evaluating conflicting medical opinions, an ALJ need not accept  the opinion of a doctor if that opinion is brief, conclusory, ///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**1. Kyle Heisey, M.D.**

Plaintiff filed an application for SSI benefits on September 1, 2004. In a decision dated June 30, 2010, ALJ Marie Palachuk denied that application for benefits. (AR at pp. 78-97). Plaintiff did not appeal from this decision and instead filed a new application for SSI benefits. It is this application which is currently before this court. This court has reviewed ALJ Palachuk's decision insofar as it concerns Plaintiff's treatment by Dr. Heisey prior to June 2010.

Plaintiff has a previous period of disability as a child. This period of disability ended on May 1, 2004, when he attained the age of 18. (AR at p. 78). Plaintiff did not appeal the termination of benefits. (AR at p. 81). Dr. Heisey has been seeing the Plaintiff as a patient for many years, indeed as early as November 2004. In November 2005, Dr. Heisey noted he had not seen the Plaintiff in approximately one year. (AR at p. 83). According to ALJ Palachuk, in November 2005, "Dr. Heisey opined [Plaintiff] was unable to do work or a training program if he continued to have absence seizures and supported an application for medical coupons to get his seizure disorder under control when he could then pursue activities more successfully." (AR at pp. 83-84).

Plaintiff apparently followed up with Dr. Heisey in August 2006. At that time:

> He admitted not taking his medications and drinking on a regular basis, with his seizures being quite active during this time. He had now stopped drinking and had started Tegretol again. He was currently not working, but had sorted cherries over the summer. He denied symptoms of depression. He thought it was possible he had some absence type episodes. He was hoping to enroll in the community college, and Dr. Heisey reported it was unclear to him if he could function in a normal classroom without special accommodation.

(AR at p. 85).

///

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6**

Dr. Heisey reported that Plaintiff had been admitted to the hospital in September 2006. A drug screen was positive for cocaine, amphetamines, barbiturate, and tricyclics. Plaintiff denied using drugs. Plaintiff had been working out and lifting weights and planned on going to college in January 2007. Dr. Heisey felt Plaintiff still had focal seizure and increased his medication, but it was also "likely [Plaintiff] had been using some illicit substances that contributed to his seizures, despite his denials." (AR at p. 85).

Plaintiff saw Dr. Heisey in April 2007. Plaintiff "stated he was taking his medication appropriately, however, Dr. Heisey noted that in October [2006], he had had a level of 5.4 which was in the low portion of the therapeutic range." (AR at p. 85). Plaintiff apparently had been forced into drug treatment after a positive urine test in September 2006, although he denied using drugs. Dr. Heisey felt it was to the Plaintiff's advantage to stay in the program and prove he was not taking drugs. Dr. Heisey increased Plaintiff's medication once again. (AR at p. 85).

In November 2007, Dr. Heisey noted Plaintiff had not had any seizures since the increase in medications. Plaintiff had been helping his mother do some landscaping-type work over the summer and was applying for positions at retailers. Plaintiff stated that the drug treatment program he had been in found no evidence of drug use or addiction on his part. Plaintiff "seemed motivated to work and was getting some help from the Department of Vocational Rehabilitation." Furthermore, "Dr. Heisey opined that [Plaintiff] was capable of medium exertion, although it was not safe for him to perform activities involving balancing and climbing due to potential for a seizure." (AR at p. 86).

Plaintiff was evaluated by Dr. Heisey in March 2008. At that time, Dr. Heisey noted that Plaintiff had been taking his medications as prescribed and had not been using any alcohol or drugs, however "he described an episode the week before when he went stiff and then blacked out." Dr. Heisey opined that Plaintiff was "severely

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

limited pending seizure control and sleep disorder control" and he increased the Plaintiff's medication.  (AR at p. 86).

In May 2008, Dr. Heisey noted he had received information from a pharmacy indicating Plaintiff was not buying his medication frequently enough to support the recommended dose.  Dr. Heisey was not convinced Plaintiff was taking his medication routinely, notwithstanding Plaintiff's assertion to the contrary.  Plaintiff reported an episode three days earlier and also waking up on the floor one day last week, suggesting he had a seizure during the night.  Dr. Heisey told him to increase his medications.  (AR at p. 86).

In July 2008, Dr. Heisey opined that Plaintiff had "permanent disabilities of seizure disorder, learning disability, and obstructive sleep apnea, which severely limited his ability to work."  Dr. Heisey completed a Medical Source Statement indicating Plaintiff needed to lie down every day for about 30 minutes due to drowsiness from his medications.  He also indicated Plaintiff had "fine motor problems with his left hand and subtle weakness in the left leg;" was able to stand and/or walk less than 1 hour in an 8-hour day; was able to sit less than 1 hour a day in and 8-hour workday; could lift and carry up to 50 pounds occasionally; could occasionally bend, squat, climb, or reach; and was unable to work around heights, machinery, or water.  (AR at p. 86).

In September 2008, Plaintiff reported to Dr. Heisey that it had been two to three weeks since he had suffered a major seizure, but that he had been having some staring spells.  Plaintiff admitted he forgot to take his medications at times and his last level in July has been lower than therapeutic levels.  Dr. Heisey reported it was his understanding that Plaintiff "had significant learning disabilities, either associated with poor control of the seizures or as a secondary diagnosis."  According to Dr. Heisey, because "inadequate management of [Plaintiff's] seizures had been a life-long issue, it was hard to estimate whether this would come under better control in the

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

1  future" and "[b]etter control of his seizures would allow him to pursue further

2  education." Plaintiff was "[c]learly . . . unable to drive and would not be a candidate

3  to work around dangerous machinery or at heights or work that required climbing."

4  (AR at pp. 86-87).

5      In March 2009, Dr. Heisey saw the Plaintiff for a "public assistance benefits

6  physical." According to the doctor at that time:

7          [Plaintiff] stated he had been feeling well and not had a seizure
           since sometime in 2008. He had been physically active, with
8          walking and basketball and had lost some weight. He was
           using his CPAP machine for sleep apnea. On exam, he was in
9          no apparent distress. No tremor or movement disorder was
           noted. Tandem gait and Romberg exam[1] were within normal
10         limits. Impression was seizure disorder, adequately controlled,
           learning disability, chronic, and obstructive sleep apnea, with
11         CPAP working well.

12  (AR at p. 87).

13     In an August 2009 evaluation, Dr. Heisey reported that Plaintiff's medication

14  (Carbamazepine) level was good, although it had been low in March. Plaintiff

15  admitted to stopping his medication around the time his grandmother died, which

16  apparently was in March. (AR at p. 88).

17     Plaintiff saw Dr. Heisey again in November 2009. ALJ Palachuk summarized

18  this report from Dr. Heisey as follows:

19         [Plaintiff] reported that for the last 2-3 weeks he could not
           remember anything. He also seemed to have lost memory for
20         at least the last 10 years. He denied any trauma. His foster mother
           accompanied him and denied any trauma or seizures. It was
21         unclear if he had been taking his seizure medicine prior to
           2-3 weeks ago, but since then, she stated she had been giving it
22         to him as prescribed. He denied use of alcohol or other drugs,
           fevers, chills, or other systemic complaints. He stated he could
23         not remember who Dr. Heisey was or having been to the clinic
           before, yet he did not seem at all distressed or frustrated. Dr.
24         Heisey reported [Plaintiff] could be expected to have some memory
           loss if he was having frequent or constant seizures and was in a

25

26  _____

27     [1] This is a test to determine if an individual has balance problems and if so,

28  the source of them.

**ORDER GRANTING DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT- 9**

post ictal [sic] state, but this did not seem to be the case.  His memory loss was felt to represent a dissociative event.

(AR at pp. 89-90).

In December 2009, Plaintiff reported to Dr. Heisey that his memory had gradually returned.  Plaintiff felt he still had a tremendous amount of stress, but he did not seek treatment from Behavioral Health as recommended.  His medication levels were normal as at his last visit, and his urine drug screening was negative.  (Ar at p. 90).

In her decision, ALJ Palachuk noted that Plaintiff saw Dr. Heisey for a public assistance benefits evaluation in February 2010.  Plaintiff reported that he tried to remember to take his medications, but sometimes missed taking them at night.  Plaintiff indicated he had not had any seizures since later November 2009.  His medication levels in December 2009 had been reasonable.  Dr. Heisey's assessment was seizure disorder, obstructive sleep apnea and learning disability.  The doctor opined that Plaintiff's disability was "permanent."  (AR at p. 90).

This appears to be the same February 2010 evaluation referred to by ALJ Robinson in her decision.  (AR at pp. 25-26).  In that evaluation, Dr. Heisey wrote: "[Plaintiff's] seizures are controlled when he takes medication, but he is unable to remember to take the meds 100% of the time."  (AR at p. 324).  Dr. Heisey indicated that Plaintiff's seizure disorder had a severity rating of "5," that being an inability to perform one or more basic work-related activities, specifically hearing, communicating and understanding or following directions.  Dr. Heisey rated Plaintiff's learning disability as a "4," that being a very significant interference with the ability to perform one or more basic work-related activities, specifically communicating and understanding or following directions.  Dr. Heisey indicated that Plaintiff was "severely limited," defined as "unable to lift at least 2 pounds or unable to stand and/or walk."  (AR at p. 325).  As to what treatment he recommended to improve "employability," he  opined "continuous use of meds for seizures."  Dr.

**ORDER GRANTING DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT- 10**

1    Heisey indicated that Plaintiff's learning disability rendered him unable to participate

2    in pre-employment activities such as job search or employment classes. He opined

3    that Plaintiff "is permanently disabled" and that "[i]mprovement in unemployability

4    is unlikely." (AR at p. 326).

5        ALJ Robinson assigned "little weight" to this evaluation for the following

6    reasons:

7            The only work limits listed involved a learning disability, mild
         sleep apnea symptoms, and the usual seizure precautions. This
8        is inconsistent with a severely limited work level, which states
         the person cannot lift at least two pounds and is unable to stand
9        and/or walk. No objective testing was submitted to validate this
         very limited work function. Further, Dr. Heisey opined that the
10       claimant's regular use of medication would improve his work
         ability[,] yet he also stated that the claimant was "permanently"
11       disabled. This inconsistent statement suggests he has relied
         mostly on subjective complaints. In addition, I note that treatment
12       records, previously discussed, indicate that Dr. Heisey found the
         claimant's seizure disorder under "good control" and his sleep
13       apnea symptoms were well managed. [Citation omitted].

14   (AR at p. 26).

15       In her decision, ALJ Palachuk referred to a May 2010 report in which Dr.

16   Heisey "opined the [Plaintiff's] seizure disorder was adequately controlled, but not

17   good enough to consider driving and dangerous-type work." (AR at p. 90). ALJ

18   Palachuk also referred to a May 2010 Medical Source Statement completed by Dr.

19   Heisey. In that document, the doctor's "[p]hysical findings included mild left sided

20   hemiparesis and mild impairment of strength/dexterity of the left hand, related to

21   cerebrovascular accident at birth." The doctor opined that Plaintiff could stand and/or

22   walk continuously for 2 hours at a time for a total of 8 hours in an 8-hour day; could

23   sit continuously for 4 hours at a time for a total of 8 hours in an 8-hour day; could lift

24   and carry 20 pounds frequently and 25 pounds occasionally; could frequently bend,

25   squat, or reach, but never climb; was unable to drive, work at heights, or around

26   machinery; and had difficulty understanding and following multi-step commands.

27   (AR at p. 90).

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

ALJ Palachuk concluded as follows regarding the record and opinion evidence before her:

> As for the opinion evidence, treating physician Dr. Heisey has been all over the board in his opinion as to whether the claimant can work or not [citation omitted]. The undersigned does not give much weight to each of Dr. Heisey's individual opinions because they vacillated so drastically, that the undersigned cannot harmonize the various opinions he provided. But clearly, the record does show that his opinion that the claimant is unable to work is predicated upon seizure control . . . . Significant in [this] opinion[] is the claimant's substance use and noncompliance with medication. Dr. Heisey reported on more than one occasion that if the claimant could get his seizure disorder under control[,] then he could pursue activities more successfully, including more education. No significant findings were noted on Dr. Heisey's . . .physical examinations, and Dr. Heisey otherwise opined the claimant was capable of lifting/carrying, standing/walking and sitting at the medium level of exertion with seizure precautions.

(AR at p. 94).

Based on the administrative record before her, ALJ Robinson found that since ALJ Palachuk's prior decision, "there has been little change in the claimant's condition" and that "[i]f any change has occurred, it is improvement." (AR at p. 25). The administrative record considered by ALJ Robinson did not include the May 2010 materials from Dr. Heisey, but it did include records from him dating from July 16, 2010 to April 18, 2011, and from October 3, 2011 to December 3, 2012, including a Medical Source Statement dated December 3, 2012. On July 16, 2010, Dr. Heisey reported that Plaintiff's "seizures are well-controlled, although he did skip a dose, last night, of his medication." (AR at p. 332). On August 24, 2010, Dr. Heisey again reported that Plaintiff's seizure disorder was "well-controlled." (AR at p. 333). On October 29, 2010, Dr. Heisey reported that Plaintiff arrived without any complaints and was unsure why he had an appointment. Dr. Heisey indicated that Plaintiff "has been taking his seizure medicine and has not had any problems." (AR at p. 334). On December 13, 2010, Dr. Heisey wrote that Plaintiff's "chronic medical problems are related to an organic brain syndrome" in that Plaintiff "suffered a right middle

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

cerebral artery infarct early in life" which resulted in "chronic abnormalities . . . of his brain (right sided encephalomalacia)." Dr. Heisey wrote that Plaintiff's seizure disorder, mild left-sided hemiparesis and learning disabilities are related to this right-sided encephalomalacia. As to Plaintiff's seizure disorder, Dr. Heisey indicated that "appears to be under good control;" as to Plaintiff's mild left hemi-paresis, Dr. Heisey indicated "[t]his manifests as easier fatigability of the left side of his body" and "limits his work options;" and as to Plaintiff's learning abilities, Dr. Heisey indicated "[t]his limits [Plaintiff's] training ability for jobs." (AR at p. 335).

On April 18, 2011, Plaintiff reported no seizures to Dr. Heisey. (AR at p. 350).

On October 11, 2011, Dr. Heisey wrote a letter to the Washington State Department of Social and Health Services (DSHS) as follows:

> Jeffrey Garcia is a 26 year old male with seizure disorder since birth. He takes medications, which give incomplete control of his seizures.
>
> He also has learning disabilities and cognitive disabilities.
>
> They are both likely related to an abnormal CT scan of the brain showing encephalomalacia at an early age.
>
> These conditions are considered to be lifelong and permanent disabilities which affect his ability to seek or maintain employment.

(AR at p. 390).

On January 30, 2012, Plaintiff told Dr. Heisey he "may" have had a seizure at night about a week and a half ago, but he was taking his medication regularly and "feeling good overall." (AR at p. 389).

On April 20, 2012, Dr. Heisey reported that Plaintiff was "feeling well," "is being compliant with his seizure meds" and "denies any seizures since his last visit." (AR at p. 381). The same thing was reported by Dr. Heisey on June 1, 2012. (AR at p. 379).

///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

On August 8, 2012, Dr. Heisey wrote the following after a visit by the Plaintiff:

> 1.  Seizure disorder: Sounds to be adequately controlled. The laboratory value confirms that he is currently taking his medication as directed.  In the past he has been inconsistent with his compliance, and therefore is not a good candidate for driving or working around machinery et cetera.  I think this will likely be a lifelong condition [that] makes it difficult for him to find gainful employment.
>
> 2.  Learning Disability: He has CNS [Central Nervous System] abnormalities documented as a child, which correspond with his difficulties in learning.  This will be a permanent, lifelong condition.  This also causes a disability and limits his employability.

(AR at p. 377).

On December 3, 2012, Dr. Heisey noted that Plaintiff's "carbamazepine level several months ago was slightly above the therapeutic range, but he denies any seizure since that time, and no symptoms of toxicity."  Examination showed he was "in no apparent distress" and "gait, tandem gait, and Romberg examination [were] normal." (AR at p. 370).  The doctor completed a Medical Source Statement on the same date.  Of note, he answered "no" to the question of whether Plaintiff's grip and manual dexterity are limited, and "yes" to the question of whether Plaintiff could manipulate his hands and arms in repetitive actions.  (AR at p. 395).  The doctor indicated that Plaintiff could stand and/or walk and sit, with usual breaks, for 8 hours in an 8-hour work day.  And although Plaintiff could never climb, he could frequently bend, squat and reach.  Dr. Heisey reiterated that seizure potential prohibited Plaintiff from working "at heights or around machinery."  (AR at p. 396).

Based on its thorough review of the medical records from Dr. Heisey, the court concludes ALJ Robinson offered specific and legitimate reasons for rejecting the doctor's opinion that Plaintiff is "permanently disabled" and "improvement in [his] unemployability was unlikely" as stated in the February 5, 2010 evaluation.  This evaluation itself indicates Plaintiff's seizures are controlled when he takes his medication as prescribed.  And this is  confirmed by many of Dr. Heisey's reports

**ORDER GRANTING DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT- 14**

pre-dating and post-dating this particular evaluation.  When Dr. Heisey indicated in the February 5, 2010 evaluation that Plaintiff was "severely limited," it is apparent he was thinking in terms of Plaintiff's abilities to hear[2], communicate and understand or follow directions, all of which are non-exertional limitations.  He was not thinking in terms of exertional limitations because obviously he opined on numerous occasions, and most recently on December 3, 2012, that Plaintiff could lift significantly more than 2 pounds and was capable of standing and/or walking.  Indeed, there is nothing in Dr. Heisey's reports manifestly contrary to the ALJ's conclusion that Plaintiff can lift and carry 25 pounds occasionally and 10 pounds frequently; that he can stand or walk six hours and sit six hours in a workday; that he can occasionally climb ramps and stairs; that he can never climb ladders, ropes and scaffolds; that he can occasionally balance; and that he can frequently stoop, kneel, crouch and crawl.  Consistent with Dr. Heisey's reports, ALJ Robinson found the Plaintiff cannot drive, due to potential seizures, and must avoid exposure to workplace hazards such as dangerous machinery and unprotected heights.  ALJ Robinson found the Plaintiff has unlimited reaching and handling with the right, upper extremity, and with the left upper extremity, he can assist in lifting and handling, but only occasionally grip.  As noted above, in his most recent evaluation dated December 3, 2012, Dr. Heisey indicated there were no problems with Plaintiff's grip and manual dexterity, although in May 2010, the doctor's "[p]hysical findings included mild left sided hemiparesis and mild impairment of strength/dexterity of the left hand, related to cerebrovascular accident at birth."[3]

---

[2] There is nothing in the record indicating Plaintiff has difficulty with hearing.

[3] It may be that non-examining physician, Elizabeth St. Louis, M.D., noted this in her review of ALJ Palachuk's decision.  (AR at pp. 125-28).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

1    The question then becomes whether there is substantial evidence supporting

2  ALJ Robinson's finding that Plaintiff has "sufficient attention and concentration to

3  perform relatively simple, non-complex tasks" and whether she failed to consider any

4  other pertinent mental limitations.  This is where Plaintiff's learning disability comes

5  into play as discussed below regarding the opinions of Dr. Genthe.

6

7    **2.  Thomas Genthe, Ph.D.**

8    Plaintiff saw Dr. Genthe on May 19, 2011 for a psychological evaluation.  Dr.

9  Genthe diagnosed Plaintiff with "Depressive Disorder, NOS[4] (managed with

10  medication)," "(by history) Learning Disorder NOS," and "(by history) Cognitive

11  Disorder, NOS." (AR at p. 355).  On the Global Assessment of Functioning (GAF)

12  scale, he assigned the Plaintiff a score of "75-80 (psychologically)" and "60

13  (cognitively)."  A score between 71-80 indicates that "[i]f symptoms are present, they

14  are transient and expectable reactions to psychosocial stressors" and "no more than

15  slight impairment in social, occupational or school functioning."  A score between

16  51-60 indicates "moderate symptoms" or "moderate difficulty in social, occupational,

17  or school functioning."[5]  According to Dr. Genthe:

18          [Plaintiff's] ability to understand and remember short, simple
             instructions was assessed as fair.  His ability to understand
19          and remember detailed instructions was assessed as fair to
             poor.  His ability to carry out short, simple instructions was
20          assessed as fair.  His ability to carry out detailed instructions
             was assessed as fair to poor.  His ability to sustain an ordinary
21          routine without supervision was assessed fair.  His ability to
             work with or near others without being distracted by them
22          was assessed as fair.  His ability to respond appropriately
             to changes in the work setting was assessed fair to poor.

23          From a social perspective, his ability to interact appropriately

24

25    _____

26    [4] "Not Otherwise Specified."

27    [5] Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. (DSM-IV-
      TR)(2000), p. 34.

28  **ORDER GRANTING DEFENDANT'S**
    **MOTION FOR SUMMARY JUDGMENT- 16**

with the public was assessed as fair, and his ability to respond appropriately to criticism from supervisors as fair.

(AR at p. 355).

ALJ Robinson assigned "some weight" to the assessment of Dr. Genthe, explaining this as follows:

> Dr. Genthe conducted a mental status examination that consisted of check off boxes without any narrative information supporting the limitations listed. Further, the mental status examination was unremarkable, with few objective deficits. Most of the assessment was based on the claimant's self-reporting of his symptoms. . . . However, the finding that claimant could perform simple and repetitive tasks, his depression was intermittent, and that his depression symptoms were managed with medication is consistent with the record, thus weighed heavily.

(AR at p. 27).

In his report, Dr. Genthe noted that he did not conduct a formal cognitive assessment or achievement testing and that his diagnoses of cognitive disorder, NOS, and learning disorder, NOS, were given "[b]ased on the information available." Dr. Genthe further noted that based on previous testing, the Plaintiff has "impaired intellectual abilities" and for" specifics," he deferred to ALJ Palachuk's prior decision. (AR at p. 355). ALJ Palachuk's decision discussed such testing which had been conducted by Jay Toews, Ed.D. (AR at p. 81 and p. 87), and Roland Dougherty, Ph.D., (AR at p. 88). Other mental health records were part of the record before ALJ Palachuk (AR at pp. 89-90), and a psychological expert, Margaret R. Moore, Ph.D., testified at the hearing before ALJ Palachuk. (AR at pp. 90-91).

Plaintiff contends the ALJ disregarded Dr. Genthe's findings regarding Plaintiff's "cognitive, learning, memory, difficulty focusing and other intellectual problems and difficulties performing even simple tasks." It is apparent, however, that Dr. Genthe deferred to the previous findings of other psychologists, while noting that Plaintiff "endorsed the following cognitive difficulties: paying attention, concentrating, being easily distracted, forgetfulness, remembering how to perform

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 17**

tasks in a timely manner, organizing tasks, performing multiple-step tasks, multi-tasking." (AR at p. 352). ALJ Palachuk found Plaintiff's testimony about the extent of his mental limitations was not credible:

> The claimant testified at the hearing that the biggest thing preventing him from working is that he's not as fast as people would like him to be. However, although a slow pace has been noted and discussed in Dr. Moore's testimony, nothing in the longitudinal record suggests he is not capable of performing simple, repetitive work. His intellectual functioning appears to be generally in the low average range, as indicated on testing . . . . The claimant testified that he needs a lot of prompting and reminding to get things done, however, attention and concentration were noted to be quite high during the psychological evaluation with Dr. Toews . . . and memory testing scores . . . were in the average range and did not reflect any significant memory difficulties. The claimant testified that he doesn't do much in a typical day, however this does not appear to be as a result of significant impairment as he earlier told Dr. Toews . . . that he is able to perform any number of activities of daily living without problems, and he told Dr. Dougherty . . . that the only reason he limited his activities was that his family was afraid he would have a seizure.

(AR at p. 93).

As discussed below, this court finds ALJ Robinson provided clear and convincing reasons for discounting Plaintiff's credibility to the extent he professes to have limitations greater than those which are confirmed by the medical record before ALJ Palachuk and ALJ Robinson.

To the extent Dr. Genthe offered an opinion about Plaintiff's cognitive abilities, ALJ Robinson provided specific and legitimate reasons for discounting that opinion, one of those being that the opinion was based on Plaintiff's self-reporting- his "endorsement"- of certain symptoms.

## NON-EXAMINING PHYSICIANS

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician. *Lester*, 81 F.3d at 832. Plaintiff contends that ALJ Robinson,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 18**

1  in giving "significant weight" to the opinions of State agency reviewing mental health
2  experts, improperly relied "wholly" upon their opinions in assessing Plaintiff's
3  psychological impairments and resulting limitations.

4  In her decision, ALJ Robinson cited evaluations from Edward Beaty, Ph.D.,
5  and Lisa Hacker, M.D., (AR at p. 27), to support her conclusion regarding Plaintiff's
6  mental RFC:  that Plaintiff has sufficient attention and concentration to perform
7  relatively simple, non-complex tasks.  Dr. Hacker, in particular, supported her
8  assessment of Plaintiff's mental RFC by citing to the 2008 testing performed by Dr.
9  Toews which "found average IQ, intact memory, and mild limits in attention and
10 concentration" and "[c]urrent mood [symptoms] are not so severe as to significantly
11 impact cognitive functioning."  (AR at p. 87 and p. 130).

12 ALJ Robinson gave "significant weight" to the State assessments "because they
13 were based on a review of the record, the evidence supports their findings and the
14 assessors are familiar with the Social Security Administration regulations." (AR at
15 p. 27).  The ALJ did not rely solely on the opinions of the non-examining physicians,
16 but relied also on the evidence of record which supports the findings of those
17 physicians.  Opinions of a non-examining physician may serve as substantial
18 evidence when they are supported by other evidence in the record and are consistent
19 with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  With regard to
20 cognitive limitations, as discussed above, Dr. Genthe deferred to the findings of the
21 psychologists who had previously conducted intelligence testing on the Plaintiff.  Dr.
22 Hacker cited this very testing in reaching her conclusions about Plaintiff's mental
23 RFC.  And as discussed below, the ALJ provided clear and convincing reasons for
24 discounting Plaintiff's credibility regarding cognitive limitations.

25

26 **CREDIBILITY**

27 Where, as here, the Plaintiff has produced objective medical evidence of an

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 19**

underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014).

Plaintiff asserts "the objective medical evidence and opinions of treating and examining providers is consistent with [his] allegations."  For reasons discussed above, closer scrutiny of Dr. Heisey's reports  and Dr. Genthe's evaluation indicates they do not support Plaintiff's assertion that he is physically and mentally incapable of doing any type of substantial gainful activity.  The record indicates Plaintiff's seizures can be adequately controlled with medication, as noted by the ALJ in her decision.  (AR at p. 24).  Furthermore, as noted by the ALJ (AR at pp. 24-25), the record reveals Plaintiff engaging in a variety of activities that are compatible with the RFC determined by the ALJ and incompatible with an inability to perform substantial gainful activity of any sort.  These are "clear and convincing" reasons for finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his alleged symptoms are not "entirely credible."  (AR at p. 24).[6]

---

[6]  The ALJ did not cite Plaintiff allegedly working in 2009 as a reason for discounting Plaintiff's credibility.  Instead, the ALJ cited that as a reason for giving less weight to Dr. Genthe's assessment.  (AR at p. 27).  As Plaintiff points out, the record does not support the Plaintiff having worked in 2009 and indeed, establishes that he has no past relevant work and has never engaged in substantial gainful activity.  And although the ALJ pointed out what Dr. Genthe reported regarding Plaintiff's response as to why he had not been employed since his last job ended (AR at p. 26), the ALJ also did not cite that as part of her credibility analysis.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 20**

**CONCLUSION**

ALJ Robinson rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff is not disabled.

Defendant's Motion For Summary Judgment (ECF No. 18) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 14) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___15th___ day of December, 2016.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 21**